JACOB MISHILOFF (THE THOMAS MOTOR COMPANY) *vs.* AMERICAN CENTRAL INSURANCE COMPANY.

Third Judicial District, Bridgeport, October Term, 1924.

WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

The plaintiff applied to S, an insurance broker, for a theft policy upon "his new automobile." S, believing the plaintiff to be the sole owner, made no specific inquiries as to plaintiff's interest in the car and plaintiff did not inform him that the vendor had retained title under a conditional bill of sale to secure an unpaid balance of the purchase price. S thereupon effected the insurance through defendant's agent, Q, who, having been informed of the statements made by the plaintiff to S, neither asked for nor received any further information, but issued a policy which described the car as fully paid for and unincumbered and provided that it should be null and void "if the interest of the assured in the property be other than unconditional and sole ownership." Thereafter the car was stolen and the plaintiff brought this suit for a reformation of the policy to set forth the true state of his title, which the trial court granted upon its conclusion that the contract was based upon a mutual mistake. *Held:*

1. That the trial court's conclusion—being one of law and therefore reviewable—was erroneous, since the finding did not disclose the facts essential to its support, viz., that there had been a mistake common to both parties by reason of which both did what neither intended.

2. That the mistake of the plaintiff was not sufficient foundation for the judgment, since a unilateral mistake is never ground for reformation of a contract, though, under some circumstances, it may justify its cancellation.

3. That the provision relative to "unconditional and sole ownership" was a reasonable and material term of the policy designed to prevent over-insurance and neglect to take proper precautions against loss; that it required a completely vested legal or equitable interest in the plaintiff at the time of the issuance of the policy as a condition precedent to its validity; that the plaintiff's interest as conditional vendee did not fulfil this prerequisite, and that, therefore, the policy never became effective.

4. That there was no merit to the plaintiff's claim that the failure of the defendant's agent to question the plaintiff concerning his ownership constituted a waiver of its right to insist upon a breach of the condition.

5. That S, being an insurance broker as defined in § 4287 of the General Statutes, was the plaintiff's agent for the purpose of negotiating the policy and the defendant's agent merely for the purpose of collecting premiums; and his action or nonaction could not create a waiver of any provision contained in the policy.

6. That S's statement to Q describing the plaintiff as owner of the car was the statement of plaintiff's agent upon which Q was entitled to rely.

7. That, at the time of the issuance of the policy, there were no facts known to the defendant and relied upon by the plaintiff to his injury which could raise an estoppel by conduct against the defendant.

8. That if the defendant had retained the premium for an unreasonable length of time after it had knowledge of the breach of condition, it would have been estopped to deny the validity of the policy—a question not fairly presented by the finding which merely stated that the defendant did not offer to return the premium until after the commencement of the action without specifying when it first acquired knowledge of the breach and for how long thereafter it retained the premium.

9. That the plaintiff was entitled to judgment only for the return of the premium.

Argued October 29th, 1924—decided March 6th, 1925.

SUIT for the reformation of a policy of insurance against loss by fire or theft of an automobile, and for the recovery of damages thereon, brought to the Superior Court in New Haven County and tried to the

court, *Avery, J.;* judgment rendered reforming the policy and awarding $3,000 to the plaintiff, from which the defendant appealed. *Error in part; judgment directed for the plaintiff for the amount of the premium only.*

Plaintiff, about November 17th, 1921, purchased an automobile under a conditional bill of sale for $4,500, of which $600 was paid in cash, another automobile was turned in at an agreed value of $2,400, and the balance, $1,500, evidenced by eight notes, seven for $100 each payable in one, two, three, four, five, six and seven months from date, and the eighth note for $800 payable eight months from date. The sales agreement was duly executed and recorded, and recited that the automobile had been placed in the possession of plaintiff, and should remain the property of the vendor, and become the property of the plaintiff when the $1,500 was fully paid. Plaintiff applied to Stowell, who conducted a general insurance agency, and who had issued to him a policy of fire and theft insurance, for a like policy on his new automobile. Plaintiff made no written application for this policy, nor made any representations as to his interest, and Stowell asked plaintiff no questions as to his interest in the car. Stowell, acting as a broker, telephoned Quinn, local agent for defendant, giving him the number of the car, name of the owner and amount of insurance desired, and requested him to issue a fire and theft policy on this car. Stowell believed plaintiff was the "unconditional and sole owner" of the car. Quinn made no inquiry of Stowell as to plaintiff's interest, and Stowell made no other representation concerning plaintiff's interest. The policy was issued by defendant through Quinn and delivered by him to Stowell and by him to plaintiff. Plaintiff did not read the policy, and was unable to read it at this time or at the time of the application, and did not know of its terms until after the loss of

the car. About October 13th, 1922, this car was stolen from plaintiff's garage, and it became, as to plaintiff, a total loss. Plaintiff duly notified defendant and filed the required proof of loss. Defendant has not returned, and did not offer to return the premium until after suit brought. The policy was in the standard form of policy and contained, and was issued subject to, the following: "2. It is a condition of this policy that it shall be null and void: . . . (c) If the interest of the assured in the property be other than unconditional and sole ownership, or if the subject of this insurance be or become encumbered by any lien or mortgage except as stated in warranty number 3 or otherwise endorsed hereon. . . ." And under the heading warranties, appeared the following: "3. The facts with respect to the purchase of the automobile described are as follows: Purchased by the assured: Month, November; year, 1921; new or second-hand, new; actual cost to assured including equipment, $4,600. The automobile described is fully paid for by the assured and is not mortgaged or otherwise encumbered, except as follows: No exceptions." At the time the car was stolen there was a balance due on the car of $500, which plaintiff thereafter paid, and the entire loss at the time the policy was issued was bound to fall on plaintiff unless the balance due could not be collected from him. The amount of the premium would have been the same had the defendant known of the real condition of the ownership by plaintiff of the automobile. Stowell has never been the agent in Connecticut of defendant. In reference to this policy he was "brokeraging" the policy; that is the term used when insurance agents exchange business with each other, each taking a part of the commission paid on the business by the company issuing the policy.

*J. Dwight Dana,* for the appellant (defendant).

*Samuel Markle,* for the appellee (plaintiff).

WHEELER, C. J. The motion to correct is granted substantially as set forth in reasons of appeal fourteen, fifteen, seventeen, twenty-three, twenty-four, twenty-six and thirty-one, and the corrections incorporated in the statement above. Paragraph thirty-five, that Stowell was not the agent of plaintiff, is stricken out as not established; he was to a limited degree his agent. Plaintiff also alleges error in failing to strike out paragraph thirty-seven, reciting that the policy of insurance was issued under a mutual mistake, etc. The trial court adjudged that the policy be reformed to comply with the character of the ownership of the plaintiff, "and that there shall be deemed to have been attached thereto a slip or rider, as is provided by § 4073 of the General Statutes, signed by the plaintiff or its agent, stating that 'it is understood and agreed that the automobile, the subject of this insurance, was purchased by Jacob Mishiloff, the assured, from the Platt & Libbey Company, under a conditional bill of sale and was owned by the said Mishiloff on the date on which this policy was executed subject to said conditional bill of sale, and this policy shall not, on that account, be considered null and void, notwithstanding any provisions to the contrary herein contained.' "

Reformation of the policy was made by the trial court upon the ground of a mutual mistake on the part of the parties to the contract. The court could exercise its power of reformation only in a case in which the mistake was common to both parties, and by reason of it both had done what neither intended. *Snelling* v. *Merritt,* 85 Conn. 83, 81 Atl. 1039; *Bishop* v. *Clay Ins.*

*Co.,* 49 Conn. 167, 171; *Hearne* v. *Marine Ins. Co.,* 87 U. S. (20 Wall.) 488.

The court rests its judgment of reformation upon its finding in paragraph thirty-seven, "It was due to a mutual mistake of the parties that the insurance policy was not written in accordance with the facts," and upon the fact that the policy does not represent what each of the parties intended. The court has not found that either Stowell or Quinn had any knowledge that the automobile was held by the plaintiff under a conditional bill of sale; in fact the contrary appears. The policy as issued was the policy the defendant intended to issue, and one of its conditions was that it should be void if the interest of the assured in the automobile was other than that of "unconditional and sole ownership." The plaintiff, upon the facts found, believed that his interest in this automobile was insured, and did not know otherwise until after its loss. There was then no basis for a conclusion that there had been a mistake common to both parties, nor a basis for a finding that each of the parties made a contract which neither intended. The facts found support the conclusion that the defendant intended one contract of insurance and the plaintiff another. In such a situation we say, in *Snelling* v. *Merritt,* 85 Conn. 83, at page 101, 81 Atl. 1039: "The mistake of one only of the parties inducing him to sign a contract which, but for the mistake, he would not have entered into, may be a ground in some cases for cancelling the contract, but it cannot be a ground for a reformation of it."

If paragraph thirty-seven be regarded as a finding of fact, it is not supported by the evidence. If it be regarded as a conclusion of fact, it is not supported by the subordinate facts. We regard its statement as a conclusion of law, and since it does not appear in the finding, directly or by inference, that the parties

made a common mistake in making this contract and thereby did what neither intended, the conclusion as one of law cannot be sustained. Other principal assignments of error are based upon the proposition that the policy was null and void *ab initio* and never took effect, because the interest of the assured in the property, being that of a vendee under a conditional bill of sale, was not the "unconditional and sole ownership" which was made a condition of the policy. The attempt to construe this provision as referring to subsequent changes in the title must fail. "The words used refer to the present and not to the future, and the conditions relate to facts as they exist at the date of the policy." *Parsons, Rich & Co.* v. *Lane,* 97 Minn. 98, 102, 106 N. W. 485. This condition is one precedent to any right of recovery by the insured under the policy. Its fulfillment is a necessary prerequisite to the validity, and hence to the operative effect of the policy. *Weed* v. *London & Lancashire Fire Ins. Co.,* 116 N. Y. 106, 22 N. E. 229; *Matthie* v. *Globe Fire Ins. Co.,* 68 App. Div. 239, 174 N. Y. 489, 67 N. E. 57; *Brown* v. *Commercial Fire Ins. Co.,* 86 Ala. 189, 5 So. 500. We know of no better definition of this condition in an insurance policy than that found in *Hartford Fire Ins. Co.* v. *Keating,* 86 Md. 130, 145, 38 Atl. 29: "To be 'unconditional and sole,' the interest must be completely vested in the assured, not conditional or contingent, nor for years or for life only, nor in common, but of such a nature that the insured must sustain the entire loss if the property is destroyed; and this is so whether the title is legal or equitable." Having ascertained the nature, meaning and legal effect of this condition, we now inquire whether the plaintiff's interest was that of "unconditional and sole ownership." His interest arose out of an agreement by which he had paid in two thirds of the purchase price and agreed to

pay the balance within a named time, the title to the automobile meantime to remain in the vendor and the possession in the plaintiff. We refer in *Petello* v. *Teutonia Fire Ins. Co.*, 89 Conn. 175, 180, 93 Atl. 137, to the authorities which hold that when the entire loss in the event of fire must fall on the insured, the reason for the rule requiring the ownership to be unconditional and sole is absent. *Security Ins. Co.* v. *Kuhn*, 207 Ill. 166, 69 N. E. 822; Vance on Insurance (1904 Ed.) 444. We leave the consideration of the soundness of this holding to a later time when the case requires its disposition. The facts in the present case do not require us to determine the point. The plaintiff's interest was a two-thirds interest; his agreement to pay the other one third might be fulfilled, or it might not. Until full payment was made, plaintiff's title was not "unconditional and sole." It was necessary that the interest, legal or equitable, be vested in the insured to make him the "unconditional and sole owner," and hence, within this definition, plaintiff never became other than a conditional vendee, the policy never became effective, and the insured's right of recovery was defeated by his non-fulfillment of this condition precedent in the policy, unless, as plaintiff claims, defendant has waived it, or under the circumstances is estopped to rely upon it. As part of the standard policy it cannot be deemed an immaterial condition. Its purpose is to prevent over-insurance and resulting fire loss due to intentional fraud, or to the negligent failure of the insured to use reasonable precautions to avoid loss. It is not an unreasonable condition. *Parsons, Rich & Co.* v. *Lane*, 97 Minn. 98, 106 N. W. 485; *Barnard* v. *National Fire Ins. Co.*, 27 Mo. App. 26; *Lake Erie & W. R. Co.* v. *Falk and Phoenix Ins. Co.*, 62 Ohio St. 297, 56 N. E. 1020; *Ballard* v. *Globe & Rutgers Fire Ins. Co.*, 237

Mass. 34, 129 N. E. 290; *Ledvinka* v. *Home Ins. Co.,* 139 Md. 434, 115 Atl. 596.

Though the construction of these words be as we hold, plaintiff asserts that defendant has waived the right to insist upon the breach of condition, by issuing the policy without inquiry as to the title of plaintiff. A waiver is defined as the intentional relinquishment of a known right. It presupposes the possession of some right which is of value, and which one voluntarily relinquishes. Knowledge of the existence of the right and the intent to relinquish it are its essential elements. In the present case no facts are found tending to show that Stowell, who was the broker effecting this insurance, or Quinn, defendant's local agent, knew that plaintiff's title was that under a sales agreement. Neither the insurance company, nor its agent Quinn, knew of plaintiff's title except as Stowell, the broker, informed them. When plaintiff applied to Stowell for insurance, he requested the issuance of a policy on "his new automobile." Stowell believed from this that plaintiff was the unconditional and sole owner of this automobile and he was justified in so believing. Some courts have held that where no representations were made by the applicant, and no knowledge possessed by the insurer of the title of the applicant, it was the duty of the latter to make inquiry, and, in the absence of such inquiry by the insurer, the fair inference is that it issued the policy with such information as it had, and hence waived the "unconditional and sole" provision of the policy. We think the *ratio decidendi* of these decisions is faulty. We do not stop to analyze them, since the facts present in this case take the case out of the setting of facts upon which these decisions were made; we merely cite a few of the leading authorities which support the contrary view that no duty of inquiry is placed upon the insurer under such circum-

stances. *Parsons, Rich & Co.* v. *Lane,* 97 Minn. 98, 108, 106 N. W. 485; *Syndicate Ins. Co.* v. *Bohn,* 12 C. C. A. 531, 65 Fed. 165; *Hoxie* v. *Home Ins. Co.,* 32 Conn. 21, 41. In the case before us, the insured informed the insurer as to his title and the insurer required no further information unless it felt unwilling to rely upon the insured's own statements. The rule of inquiry, if applied to the unconditional and sole provision of the policy, would be equally applicable to all the other provisions of the contract and impose upon the insurer an impractical burden.

Stowell, under General Statutes, § 4287, was an insurance broker, and as such he was the agent of the insurer merely as to the premium and for nothing else, he was the agent of the insured in negotiating for this policy. *Allen* v. *German-American Ins. Co.,* 123 N. Y. 6, 16, 25 N. E. 309; *Salvate* v. *Firemen's Ins. Co.,* 42 R. I. 433, 436, 108 Atl. 579; *Ordway* v *Chace,* 57 N. J. Eq. 478, 481, 42 Atl. 149; Cooley, Briefs on Insurance, Vol. 1, p. 68.

The policy also provided: "No person shall be deemed an agent of this company unless specifically authorized in writing by the company." Since Stowell was not an agent of the insured except for the limited purposes already specified, he could not bind the insurer, nor could a waiver of this provision arise through his action or nonaction. Stowell accepted the insured's statement that he wanted a policy of insurance on his car, and procured the number of the car, and telephoned Quinn the name of the owner, the number of the car, and the amount of the insurance, and Quinn relied upon this statement and made no further inquiry. No reason is suggested why Quinn should not have relied upon Stowell's statements, since he was the agent of plaintiff, and none occurs to us. Moreover, "the policies themselves, containing, as they did,

the contracts that they should be void if the interest
of the assured had not been truly stated to the com-
pany, or if it was not truly stated in the policy, or if
it was not the sole and unconditional ownership, and
a description of it was not indorsed on the policy, were
pointed inquiries of the assured whether their interest
was the sole unconditional ownership of the property
described, and their silence and acceptance of the poli-
cies was the answer." *Syndicate Ins. Co.* v. *Bohn,* 12
C. C. A. 531, 537, 65 Fed. 165.

The insurance policy issued to the plaintiff insured,
limits the power of its agents to waive its terms, and
in no event to waive its terms unless such waiver be
written upon or attached to the policy. Such a pro-
vision has no application to a waiver implied from
conduct. If the situation does not create a waiver,
plaintiff claims that defendant insurer is estopped to
contest the validity of this policy. To create an
estoppel in this case, facts must be present and known
to the insurer, and have been relied upon by the in-
sured to his injury. *Fidelity & Casualty Co.* v. *Palmer,*
91 Conn. 410, 419, 99 Atl. 1052. There were no facts
known to the insurer, and none relied upon by the in-
sured to his injury at the issuance of this policy, upon
which an estoppel by conduct could possibly arise.
*Lee* v. *Casualty Co.,* 90 Conn. 202, 209, 96 Atl. 952.
We pointed out in *Bernhard* v. *Rochester German Ins.
Co.,* 79 Conn. 388, 393, 65 Atl. 134, that the line be-
tween waivers implied from conduct and estoppels
"oftentimes becomes so shadowy that in the law of
insurance the two terms have come to be quite com-
monly used interchangeably." A basis for claiming an
implied waiver or an estoppel by conduct appears to
arise in the finding, although not discussed in the briefs
of counsel.

The defendant received and retained the premiums

upon this policy, without offer to return the same until after this action had begun. The action was begun on February 19th, 1923. The date upon which the offer to return was made does not appear, merely that it was after this action was begun. Neither does it appear when the defendant first knew of the fact that plaintiff was not the unconditional and sole owner of this car at the time of the issuance of the policy. Knowledge of a breach of a provision in a life insurance policy and the continued acceptance of the premium upon the policy for three years, was, we held, a complete waiver of the breach. *Bevin* v. *Conn. Mutual Life Ins. Co.*, 23 Conn. 244, 254.

In *Hoxie* v. *Home Ins. Co.*, 32 Conn. 21, we held that there is an implied warranty of seaworthiness in a time policy of insurance on a bark, and that where an insurance company has retained the premium and treated the policy as in force, the company is estopped after loss to claim that the policy did not attach by reason of unseaworthiness. In *Hennessey* v. *Metropolitan Life Ins. Co.*, 74 Conn. 699, 52 Atl. 490, we held that a pleading which set up the collection of premiums on a life insurance policy after the officers of the company had knowledge of all the facts upon which alleged forfeitures were based, set up a good estoppel *in pais*. We made a similar ruling in an action upon a policy of indemnity against loss and damage resulting from a strike, saying: "It is a waiver, but it is one the effectiveness of which comes through the application of the principles underlying estoppels." *Buffalo Forge Co.* v. *Mutual Security Co.*, 83 Conn. 393, 400, 76 Atl. 995; *Benanti* v. *Delaware Ins. Co.*, 86 Conn. 15, 19, 84 Atl. 109. These decisions commit us to the doctrine, which is very generally the accepted doctrine, that acceptance or retention of premiums on a policy of insurance with knowledge of its breach, will constitute a waiver of

the breach implied from the conduct of the insurer through the application of the principles of estoppel. The mere retention or acceptance of the premium without knowledge of the breach, cannot constitute such waiver or estoppel. The retention or acceptance of the premiums, after demand for their return by the insured, will be a recognition of the continuing force of the contract, and an election by the insurer to waive any existing breach of its provision. *Parsons, Rich & Co.* v. *Lane,* 97 Minn. 98, 122, 106 N. W. 485. The facts of record do not enable us to know whether the insured ever demanded the return of this premium, or, if such demand was made, when, nor do they enable us to know when the insurer had knowledge of the breach and whether it retained the premium thereafter and for what period of time. The plaintiff could not prevail unless it appeared that the defendant had knowledge, through its agent or otherwise, that the plaintiff was not the unconditional and sole owner of this car, and this the record fails to supply.

There is error in part, and the Superior Court is directed to render judgment for the plaintiff for the premium paid by him to defendant, with interest and costs.

In this opinion the other judges concurred, except KELLOGG, J., who concurred in the result, but died before the opinion was written.